UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE, FOR THE BENEFIT OF THE HOLDERS OF DEUTSCHE MORTGAGE & ASSET RECEIVING CORPORATION, COMM 2014-CCRE19 MORTGAGE TRUST COMMERCIAL MORTGAGE PASS THROUGH CERTIFICATES, ACTING BY AND THROUGH MIDLAND LOAN SERVICES, A PNC REAL ESTATE BUSINESS, SOLELY IN ITS CAPACITY AS SPECIAL SERVICER,<br><br>   Plaintiff,<br>v.<br><br>FREP III – ROZZELLE CROSSING, LLC,<br><br>   Defendant. | Case No.: 3:19-cv-00549 |

## CONSENT ORDER and NOTICE OF HEARING

This cause came before the Court on the "Joint Motion for Entry of Consent Judgment and Order" (the "Motion"), Doc. No. 6, filed by Plaintiff Wells Fargo Bank, N.A., as Trustee, for the Benefit of the Holders of Deutsche Mortgage & Asset Receiving Corporation, COMM 2014-CCRE19 Mortgage Trust Commercial Mortgage Pass Through Certificates, Acting by and Through Midland Loan Services, a PNC Real Estate Business, solely in its capacity as Special Servicer ("Plaintiff"), and Defendant FREP III – Rozzelle Crossing, LLC ("Consenting Defendant," and together with Plaintiff, collectively, the "Parties"). Upon due consideration of

the Parties' filings and the pleadings in this action, the Court finds that the Motion is due to be and hereby is **GRANTED**.[1] The Court finds, orders, adjudges and decrees as follows:

## Findings of Fact

1. Consenting Defendant obtained a loan (the "Loan") from Cantor Commercial Real Estate Lending, L.P. ("Original Lender") made pursuant to the terms of that certain Loan Agreement dated July 29, 2014, entered into by and between Consenting Defendant and Original Lender (the "Loan Agreement").

2. To evidence the Loan, Consenting Defendant executed that certain Promissory Note dated July 29, 2014, in the original principal amount of $6,800,000.00, made payable to the order of Original Lender (the "Note").

3. In order to secure Consenting Defendant's obligations to Original Lender under the Note, Consenting Defendant granted to Original Lender a first-priority security interest in certain real property (the "Real Property") pursuant to that certain Deed of Trust, Security Agreement, Assignment of Leases and Fixture Filing dated July 29, 2014 (the "Deed of Trust"). The Deed of Trust was recorded in the Register of Deeds for Mecklenburg County, North Carolina (the "Register's Office") on August 1, 2014 in Book 29355, Page 914.

4. Pursuant to the Deed of Trust, Consenting Defendant further granted to Original Lender an absolute assignment of and security interest in (i) all rents, income, profits and issues stemming from the Real Property and improvements located thereon (collectively, the "Rents"); (ii) all improvements and fixtures located upon the Real Property; (iii) all equipment used in connection with the Real Property or improvements located thereon; and (iv) all other personal

---

[1] The Court notes the parties requested entry of a Consent "Judgment," however, because it appears this is not a final judgment and issues remain to be decided by the Court, the Court finds an Order, not Judgment, is appropriate here.

property of the Consenting Defendant including general intangibles and proceeds of all of the foregoing (together with the Rents, collectively, the "Personal Property," and together with the Real Property, collectively, the "Collateral"). The Collateral encompasses all real and personal property securing the Loan, including, without limitation, the Rents. Plaintiff and Consenting Defendant agree that Consenting Defendant is not in violation of this Consent Judgement and Order by virtue of paying or incurring operating expenses related to the Collateral subsequent to Consenting Defendant's receipt of the Demand Letter (as hereinafter defined) from Plaintiff.

5. Pursuant to the Deed of Trust and that certain Assignment of Leases and Rents dated July 29, 2014 and recorded in the Register's Office on August 1, 2014 in Book 29355, Page 942, executed by Consenting Defendant in favor of Original Lender (the "ALR"), Consenting Defendant absolutely and unconditionally assigned to Original Lender all Rents from the Real Property and improvements located thereon.

6. Original Lender's interest in the Personal Property was perfected and evidenced by the filing of UCC-1 Financing Statements, including that certain filing recorded with the Register's Office on August 1, 2014, in Book 29355, Page 954; and that certain financing statement filed with the Florida Secretary of State on July 30, 2014, as Instrument Number 20140191648X (collectively, the "Original Lender Financing Statements").

7. Original Lender assigned all its right, title and interest in and to the Loan, and documents evidencing the Loan, to Plaintiff by way of the following documents (collectively, without limitation, the "Assignment Documents"):

    a. That certain General Assignment dated August 21, 2014, executed by Original Lender in favor of Plaintiff;
    b. That certain Allonge to Promissory Note executed by Original Lender in favor of Plaintiff;
    c. That certain Assignment of Deed of Trust, Security Agreement, Assignment of Leases and Fixture Filing dated August 21, 2014, executed by Original Lender

       in favor of Plaintiff, recorded in the Register's Office on August 27, 2014 in Book 29407, Page 401;
d. That certain Assignment of Assignment of Leases and Rents dated August 21, 2014, executed by Original Lender in favor of Plaintiff, recorded in the Register's Office on August 27, 2014 in Book 29407, Page 405; and
e. That certain UCC Financing Statement Amendment recorded with the Register's Office on September 16, 2014 in Book 29449, Page 122, as continued by that certain filing dated February 14, 2019 and filed with the Register's Office in Book 33285, Page 450; and that certain UCC Financing Statement Amendment filed with the Florida Secretary of State on September 2, 2014, as Instrument Number 201402110276, as continued by that certain filing dated February 12, 2019 bearing Instrument Number 201907681009 (collectively, the "Plaintiff Financing Statements," and together with the Original Lender Financing Statements, collectively, the "Financing Statements").

8. The Note, Deed of Trust, ALR, Financing Statements, Assignment Documents, and all other documents referring to, relating to, securing, or evidencing the Loan are hereinafter referred to as the "Loan Documents," and any capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Loan Documents.

9. Plaintiff is the owner and holder of the Loan and all rights of the Original Lender under the Loan Documents.

10. Consenting Defendant has failed to make payments when due and owing as required under the Loan Documents, including without limitation, payment of all loan obligations arising under the Loan Documents on or before August 6, 2019, the maturity date provided by the Loan Documents (the "Maturity Default").

11. By letter dated September 30, 2019, Plaintiff notified Consenting Defendant of the Maturity Default and demanded immediate payment of all amounts due under the Loan (the "Demand Letter").

12. By letter dated October 2, 2019, Plaintiff demanded that Consenting Defendant turn over to Plaintiff all Rents received in connection with the Real Property since the date of the

Maturity Default in addition to all Rents received or held by any third-party going forward, and revoked Consenting Defendant's license to collect Rents from the Real Property (the "Demand for Turnover").

13. In accordance with N.C.G.S. § 45-21.16, a written statement regarding notice of the outstanding balance due and owing under the Note, Deed of Trust, and other Loan Documents has been transmitted to Consenting Defendant.

14. Consenting Defendant has not cured the Maturity Default.

15. Accordingly, Events of Default have occurred and are continuing under the Loan Documents including, among other things, Consenting Defendant's failure to pay the full amounts when due and owing as required under the Loan Documents.

16. Pursuant to the Loan Documents, the entire outstanding principal balance of the Note, together with all accrued and unpaid interest late charges, and all other obligations and amounts due and owing under the Note, Deed of Trust, and other Loan Documents have matured and are due and immediately payable.

17. The terms of the Demand for Turnover and the terms of the Loan Documents indicate that any license to the Consenting Defendant for the purpose of collecting the Rents has terminated. Consenting Defendant contends that the Loan Documents grant the Plaintiff a security interest in the Rents.

18. As of November 6, 2019, the following amounts are due and owing under the Loan Documents: Outstanding principal in the amount of $6,270,560.69; Accrued Interest in the amount of $104,541.51; Accrued Default Interest in the amount of $82,381.41; Late fees in the amount of $5,407.83; A Reconveyance/Payoff Fee of $500.00; A UCC filing fee of $81.00; Special Servicing Fees in the amount of $65,318.34; less credit for escrow and reserve funds on deposit of

$249,703.92, for a total outstanding indebtedness of $6,279,086.86. Consenting Defendant is also responsible for paying to Plaintiff all costs incurred in enforcing Plaintiff's rights and remedies under the Loan Documents, as allowed by law.

19. As a result of the Events of Default and Consenting Defendant's failure to cure the Events of Default, Plaintiff filed a Complaint with this Court on October 18, 2019 seeking (i) the appointment of a receiver to protect Plaintiff's interest in the Collateral; (ii) a temporary and permanent injunction prohibiting Consenting Defendant from interfering with the duties of any receiver and/or Plaintiff; and (iii) an order directing the Consenting Defendant to pay over to Plaintiff all Rents, receipts and revenues relating to the Collateral. (Doc. 1).

20. Consenting Defendant has not filed an Answer to Plaintiff's Complaint, but instead has sought to resolve this matter by entry of consent judgment.

## Relief

**WHEREFORE**, based on the above findings of fact, the record in this case, and the Consenting Defendant's consent to the relief requested by Plaintiff, the Court **ORDERS, ADJUDGES, AND DECREES** as follows:

1. Pursuant to Rule 65(b) of the North Carolina Rules of Civil Procedure, Consenting Defendant is enjoined, for all actions (and, with respect to all cash or funds generated from the Collateral following the Maturity Default) from and after the Maturity Default, as follows:

    a. Consenting Defendant, and any person or entity subject to this injunction under Paragraph 2 of this Order, are enjoined from collecting, transferring or disposing of the Collateral, or removing from the Collateral, or from any other location, or secreting, modifying, destroying or deleting, in whole or in part, any and all books and records related to the Collateral, or any other matter related to the financial

condition or operations of Consenting Defendant or the Collateral, regardless of whatever form such books and records are kept or maintained (whether paper, electronic or otherwise);

b. Consenting Defendant shall promptly turn over to Receiver (defined below) all cash and other funds generated from the Collateral; and

c. Subject to other provisions of this Order, Consenting Defendant and each person or entity acting on behalf of Consenting Defendant are further enjoined from taking any action to interfere in any way with the possession, custody, control or operation of the Collateral by the Receiver and/or Plaintiff.

2. Pursuant to Rule 65(d) of the North Carolina Rules of Civil Procedure, the injunction set forth in the foregoing paragraph 1 is binding on Consenting Defendant and its officers, agents, servants, employees and attorneys, and upon other persons as set forth in Rule 65(d).

3. Any and all persons in possession of or having control over any funds and/or documents, including accounting records, relating to the Collateral, shall deliver them to the Receiver forthwith, and shall account for and pay over to the Receiver any such funds in the person's possession, custody or control.

4. Pursuant to N.C.G.S. §§ 1-501, 1-502, Trident Pacific Real Estate Group, Inc. is hereby appointed as receiver for the Collateral (the "Receiver").

5. The Receiver shall have the following rights and powers:

a. Enter upon and take possession and control of the Collateral, and to perform all acts necessary and appropriate for the operation and maintenance thereof;

b. Take and maintain possession of all documents, books, records, papers and accounts relating to the Collateral;

c. Complete any construction and/or remediation projects necessary or appropriate to render the Collateral fit for leasing and operation;

d. Exclude Consenting Defendant and its agents, servants and employees wholly from the Collateral, including changing any and all locks to the Collateral;

e. Allow Plaintiff, its counsel, appraisers, and other independent third-party consultants engaged by Plaintiff or its counsel access to the Collateral at all reasonable times to inspect the Collateral and all books and records with respect thereto, and to cooperate with Plaintiff, its counsel, appraisers and other independent third-party consultants to evaluate the Collateral;

f. Manage and operate the Collateral, or employ a third-party to manage and operate the Collateral, under any existing name or trade name (or new name) if the Receiver deems appropriate to do so, subject to the consent of Plaintiff;

g. Exercise any and all rights of Consenting Defendant in and to any and all license and/or franchise agreements;

h. Retain, hire or discharge on-site employees at the Collateral (none of whom are or shall be deemed to be employees of Plaintiff) without any liability to the Receiver or Plaintiff;

i. Establish pay rates for on-site employees at the Collateral;

j. Preserve, maintain, and make repairs and/or alterations to the Collateral;

k. Conduct a marketing or leasing program with respect to the Collateral, or employ a marketing or leasing agent or agents to do so, directed to the leasing or sale of the

Collateral under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable;

l. Employ such contractors, subcontractors, materialmen, architects, engineers, consultants, managers, brokers, marketing agents, or other employees, agents, independent contractors or professionals, as Plaintiff may in its sole discretion deem appropriate or desirable to implement and effectuate the rights and powers granted therein;

m. Execute and deliver, as attorney-in-fact and agent of Consenting Defendant or in Consenting Defendant's name, such documents and instruments as are necessary or appropriate to consummate transactions authorized by order of this Court;

n. Enter into such leases, whether of real or personal property, or tenancy agreements, under such terms and conditions as Plaintiff may in its sole discretion deem appropriate or desirable;

o. Collect and receive all Rents from the Collateral;

p. Eject tenants or repossess personal property, as provided by law, for breaches of the conditions of their leases or other agreements;

q. Sue for unpaid Rents, payments, income, or proceeds in Consenting Defendant's name;

r. Maintain actions in forcible entry and detainer, ejectment for possession, and actions in distress for rent;

s. Compromise or give acquittance for Rents, payments, income, or proceeds that may become due;

t. Determine and report to the Court and Plaintiff whether any Rents have been previously received by Consenting Defendant and used for purposes other than for the maintenance, management, and expenses of the Collateral;

u. Require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders, and employees of Consenting Defendant to return any and all Rents in their possession;

v. To open and review mail directed to Consenting Defendant and its representatives pertaining to the Collateral;

w. Analyze, determine, and implement the best approach to maximize value from the Collateral for the benefit of Consenting Defendant's creditors and interest lenders, including without limitation, marketing and selling the Collateral as a going concern, subject to Plaintiff's prior written approval, provided, however, that in no event shall Receiver's power to sell the property, or any other power granted hereunder, in any way impair Plaintiff's ability to exercise its rights and remedies under the Loan Documents, including, without limitation, the right to foreclose the Deed of Trust;

x. Enter into contracts and agreements necessary to initiate and continue normal operations of the Collateral in Consenting Defendant's name or Receiver's name;

y. Amend, modify, or terminate any existing contracts affecting the operations of the Collateral, but only upon terms and conditions that are subject to Plaintiff's approval;

z. Pay all appropriate real estate taxes, personal property taxes, or other taxes or assessments against the Collateral;

aa. Exercise all rights of the Consenting Defendant in and to all government-issued permits, certificates, licenses, or other grants of authority, to take all steps necessary to ensure the continued validity of such permits, certificates, and licenses, and to take all steps necessary to comply with all requirements, regulations, and laws applicable to the Collateral;

bb. Maintain an account for the Collateral with a federally insured banking institution or a savings association with offices in the State of North Carolina in the Receiver's own name, as Receiver, or in the name of Consenting Defendant as its Receiver, from which the Receiver shall disburse all payments authorized by order of this Court;

cc. Receive and endorse checks pertaining to the Collateral, either in Receiver's name or in Consenting Defendant's name; and

dd. Do any acts which the Receiver deems appropriate or desirable to protect the security hereof and use such measures, legal or equitable (as Plaintiff in its sole discretion deems appropriate or desirable) to implement and effectuate the provisions of the Loan Documents.

6. Consenting Defendant, its officers, agents, members, representatives, parents, affiliates, subsidiaries, employees, and attorneys, shall not terminate any existing insurance policy that provides coverage over the Collateral and shall turn over any existing insurance policies to the Receiver. Within five (5) business days from entry of this Order, Consenting Defendant shall add the Receiver and the Plaintiff as additional insured parties and loss payees to any existing

insurance policies that provide coverage over the Collateral. The Receiver shall obtain insurance, if needed, in addition to existing pre-paid coverage for the Collateral in such amounts, with such companies, and to insure against such risks, as the Receiver deems necessary or desirable and the Receiver may finance any of the premiums associated with such insurance without Court approval. If the Receiver deems it necessary to replace insurance coverage, or does so at the request of the Plaintiff, the Receiver will endeavor to replace the insurance with comparable coverage to that required under the Deed of Trust (as defined herein and in the Verified Complaint). This insurance will be considered primary and non-contributory with respect to insurance maintained by the Receiver. All cost of said insurance and applicable deductibles shall be paid via the operating account.

7. The Receiver or Plaintiff may apply to this Court by motion and upon notice to all parties for further or other authority as may be necessary or desirable for the performance of the Receiver's duties.

8. The Receiver may show and deliver a copy of this Order to any third-party as proof of Receiver's capacity and powers in relation to the Collateral, and such third-parties are entitled to rely on this Order as proof of Receiver's capacity to act with respect to the Collateral, including the Receiver's rights to contract for services for, or to otherwise deal with Collateral, and to take control of any accounts related to the Collateral.

9. No utility provider, that is not subject to the jurisdiction of the North Carolina Utilities Commission ("NCUC"), may terminate service or refuse service to the Collateral solely due to the appointment of the Receiver for the Collateral or due to prior unpaid bills incurred for the Collateral before the appointment of the Receiver. Utility companies include but are not limited to those that provide the following services: electric, gas/steam, fuel, water, sewer,

telephone, pager, cable, trash/refuse, internet, provision of domain names, hosting of email/website, snow removal, and other such vital services as the Receiver shall determine in its sole judgment applying commercially reasonable standards.

10. Nothing herein shall alter, amend, modify or waive any right of Plaintiff to exercise any right it may have under the Deed of Trust encumbering the Collateral, including, without limitation, to foreclose the Collateral.

11. The Receiver shall maintain accurate and complete books of accounts and records, and records of his activities at or in relation to the Collateral and shall file monthly status and financial reports with the Court and serve copies of the same on Consenting Defendant or counsel for the Consenting Defendant.

12. The Receiver shall be compensated for its services in an amount equal to the Receiver Fee set forth on **Exhibit A** hereto and on the terms stated in the Verified Complaint.

13. The receipts received from the operation of the Collateral shall be applied to reimburse the Receiver for all reasonable costs and expenses that it (or its delegates) incurs as a result of serving as receiver, for payment of insurance premiums and management fees authorized thereunder, to compensate Receiver for its services as receiver, and for payment of all obligations under the Loan Documents.

14. Pending further order of the Court, the temporary restraining order granted herein shall expire at 11:59 p.m. of the tenth (10th) calendar day following the date on which this Order is entered. This Court shall conduct a hearing on the imposition of a preliminary injunction as set forth below.

15. The Court will reserve judgment on all matters addressed in the Verified Complaint not expressly addressed by this Order and will address those issues at the trial of this matter or upon motion of either party.

TAKE NOTICE that an evidentiary hearing in this matter will take place at 9:45 a.m. on December 16, 2019, in Courtroom 1-1 of the Charles R. Jonas Building, 401 W. Trade Street, Charlotte, North Carolina, 28202. The parties will be limited to 30 minutes per side for presentation of evidence and argument.

IT IS SO ORDERED.

Signed: December 9, 2019

Frank D. Whitney
Chief United States District Judge

**Exhibit A**

Receiver's Compensation

The Receiver Fee shall consist of the following:

(a) a monthly fee for reporting and other receivership services in the amount of $4,000.00.

**Prepared By:**

/s/R. Andrew Hutchinson
R. Andrew Hutchinson NCSB No. 46764
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
100 Med Tech Parkway, Suite 200
P.O. Box 3038
Johnson City, Tennessee 37602
(423) 928-0181
(423) 979-7652 (fax)
dhutchinson@bakerdonelson.com
*Counsel for Plaintiff*

**Consented to By:**

/s/Clint S. Morse
Clint S. Morse
North Carolina State Bar No. 38384
BROOKS, PIERCE, MCLENDON, HUMPHREY
   & LEONARD, LLP
P.O. Box 26000
Greensboro, NC 27420
Telephone: (336) 271-3152
cmorse@brookspierce.com
*Counsel for Consenting Defendant*